## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF ALABAMA,
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **MONIQUE BATTLES** | ) | |
| | ) | |
| | ) | |
| **Plaintiff** | ) | |
| **vs.** | ) | **Civil Action No.  20-222** |
| | ) | |
| | ) | **JURY DEMAND** |
| **HALLMARK MOBILE APARTMENTS** | ) | |
| **and ROYAL AMERICAN MANAGEMENT** | ) | |
| | ) | |
| | ) | |
| **Defendants** | ) | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE
## RELIEF AND, WHERE APPROPRIATE, FOR DAMAGES

## I.  SUMMARY OF CLAIMS

**1.** Mrs. Monique Battles (Mrs. Battles or Battles) brings this action on behalf of herself and her family, principally under the auspice of the Fair Housing Amendments Act, 42 U.S.C. §§ 3601 *et seq;* the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*; and, particularly, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a). Mrs. Battles is seeking, initially, declaratory and injunctive relief and secondarily, where permitted, compensatory and exemplary damages. Mrs. Battles is a 38-year-old disabled mother with a husband and two minor children. Mrs. Battles' receives social security and supplemental security income due to her disability. From the onset of her

1

becoming a resident of the Defendant's federally subsidized, or otherwise government insured residential housing complex, she has sought and has been constructively refused permission to move downstairs to a floor level housing unit. Several such units have become available, yet she has been steadfastly denied the right to move into one. Defendants' refusal to grant her a medically necessitated housing accommodation has violated her rights protected or otherwise mandated by the above-mentioned federal Acts.   As a practical matter, there is no significant difference in the analysis of rights and obligations created by the three remedial acts; FHAA, ADA, Section 504 of the Rehabilitation Act.

## II. IDENTITY OF THE PARTIES

2.  Plaintiff **MONIQUE BATTLES** (hereinafter sometimes referred to a Mrs. Battles or Battles), at all times relevant, was, is, and remains a "handicapped person" as that term is defined by 42 U.S.C. § 3602. Battles is and at all times relevant, has been a person with disabilities as defined by 42 U.S.C. § 12102, and 29 U.S.C. § 705(9)(B)

3.  Mrs. Battles is and at all relevant times has been a tenant of a residential apartment complex, located in the City of Mobile Alabama and situated at 1066 Cody Road North Apartment No. 321. She resides in a residential complex known as Hallmark Apartments or Hallmark of Mobile Apartment (hereinafter designated as "the **COMPLEX**).

4.  Mrs. Battles has standing to bring this action because, among other things,

2

she has suffered from discrimination, as a person with disabilities and who is a tenant of the Defendants' **COMPLEX**, brought about due to the Defendants' persistent failure and/or refusal to make its premises accessible to and useable by disabled persons, such as Ms. Battles, and by its further persistent failure and refusal to maintain an accessible elevator, resulting in denial of access, thereby   failing to make its dwelling units adaptable to the needs of disabled tenants, such as Ms. Battles.  Finally,  after repeated request for reasonable accommodation of a ground floor residential unit, the Defendants' repeated failure and/or refusal to honor these request., By this action, the Mrs. Battles seeks the Court's assistance in forcing Defendants to live up to their responsibilities under federal, and state and laws and she seek, additionally, appropriate compensatory, statutory and punitive damages to her for past instances of discrimination.

5.    Defendant **HALLMARK APARTMENTS a/k/a HALLMARK OF MOBILE APARTMENTS** is purported to be the legal owner and operator of a building consisting of at least 90 dwelling units, located in the City of Mobile, Alabama, at 1066 Cody Road N, Mobile Alabama 36608. This Defendant's discriminatory acts and omissions violated the Fair Housing Act, as Amended, the Americans with Disabilities Act, Title II; the Americans with Disabilities Act, Title III; Section 504 of the Rehabilitation Act of 1973, and, the laws of the State of Alabama, as described herein.

3

6.   Defendant **ROYAL AMERICAN MANAGEMENT** is a Florida based company, doing business in the State of Alabama, with a statutory agent situated in Montgomery Alabama. This Defendant is either the owner, operator or manager of Defendant Hallmark Apartments and, as such, is chargeable with the unlawful acts and/or omissions of Defendant Hallmark, as well as its own. As with Defendant Hallmark, this Defendant's discriminatory acts and omissions violated the Fair Housing Act as Amended, The Americans with Disabilities Act, Title II; the Americans with Disabilities Act, Title III; Section 504 of the Rehabilitation Act of 1973, and the laws of the State of Alabama, as described herein.

## III. JURISDICTION

7.   This Court has jurisdiction over the claims brought under federal law pursuant to 28 U.S.C. §§ 1331, for violations of, 42 U.S.C. §§ 3601 *et seq* (Federal Fair Housing Amendments Act of 1988"); 42 U.S.C. §§ 12101 *et seq*. ( Americans With Disabilities Act); and 42 U.S.C. §§ 701 et seq.( Section 504 of the Rehabilitation Act of 1973). This Court further has jurisdiction over the pendent state law claims brought under Alabama law, pursuant to 28 U.S.C. 1367.

## III. VENUE

8.   Venue in this District is appropriate pursuant to 28 U.S.C. §1391(e)(3) in that Plaintiff resides in and the corporate defendant does business within this District.

4

## IV. GENERAL FACTUAL ALLEGATIONS

**9.**  Mrs. Battles is a married mother with two minor school-age children. Some time prior to 2016, Battles suffered a myriad of medical problems, including, but not limited to, osteoarthritis of both knees and of the lower back, a degenerative disc condition in her lower back, significant anxiety, severe migraine headaches and substantial nerve damage. These conditions, in combination, significantly limits her endurance, her range of motion, her mobility and her overall general wellness.

**10.**  Mrs. Battles has been prescribed the following medications, which themselves contribute to her lethargic affect: Buspirone 15 mg, 3 times daily; Vitamin D3 50,000 1 time per week; Pantoprazole 40 mg, 1 times daily; gabapentin 600 mg 3 times daily; Naproxen 550 mg, 1 tablet, as needed; Hydrochlorothiazide 25 mg, 1 time daily; Cyclobenzaprine 10 mg 2 times daily; Celecoxib 200 mg, 1 time daily; Myrbetriq 50 mg, 1 times daily; Promethazine 25 mg, 1 tablet, as needed; Sumatriptan 100 mg, 1 tablet, as needed; Topiramate 50 mg, 2 times daily; Oxybutynin 10 mg, 1 time daily; and Hydrocodone 10 325 mg,  3 times daily.

**11**  Battles initially applied for social security disability, was denied, but upon further review, was awarded full benefits during February 2019.

**12.**  Prior to Mrs. Battles and her family leasing their current residence with the defendant, Mrs. Battles' husband, Travis Battles, was employed with the Defendants as part ground keeper but mostly maintenance worker.

13.   In the process of attempting to obtain the apartment, Travis explained to the Defendants' complex manager, Nicole Wells, that his wife had no income and couldn't work because she had a series of disabling injuries, for which she was then seeking disability benefits. He informed Wells that his wife's condition greatly affected her mobility.

14 On or about February 13, 2019, when the Battles and the Defendants' representative were completing the application process, Mrs. Battles told Wells, office manager, that she needed a ground floor apartment, due to her medical conditions. She further informed her that navigating the upper stairs would be extremely difficult and painful for her.

15.   Ms. Wells advised Battles that there were no current downstairs units available; and that apartment 321 was the only one vacant at the time. Wells assured Battles that she would be offered the first first-floor level apartment which becomes available. This promise was never fulfilled even after more than a year of tenancy.

16.   Approximately two weeks after Battles reluctantly took the upstairs apartment, she inquired of Wells again about the need for a downstairs apartment, as an accommodation for her medical condition. Wells gave her a form, designated as "Reasonable Accommodation" form. In this form, Battles was required to explain her specific needs for an accommodation. Battles filled out the form truthfully and in its entirety.

6

17. To date, none of the Defendants, their agents, servants, employees, or attorney have ever questioned Mrs. Battles need for nor entitlement to a ground floor apartment resulting from her limitation on negotiating several flights of stairs caused by her medical condition.

18. Sometime in June 2019, Mr. Travis quit his job with the Defendants. They had greatly reduced his hours to the point that he had to find other means of employment.

19. Subsequent to Travis quitting his employment, the family notice a perceptible difference in how they were treated by Ms. Wells. Wells became mostly unresponsive when Mrs. Battles would inquire of her the availability of a ground floor unit.

20. Mr. Travis would notice when ground floor units became vacant and would share this information with his wife. He noticed such vacancies during each of the following months: June 2019, July 2019, August 2019, and September 2019.

21. When Mrs. Battles inquired about these vacancies, Wells would tell her that the units had been previously rented and therefore were not available to her.

22. In August 2019, Battles again inquired about a ground floor unit. She was told that she needed to fill out another "Reasonable Accommodation" form because the first one was misplaced and/or lost. At no time prior to this date did the Defendants, their agents, servants or employees, inform Mrs. Battles, or any member of her family, that the required form was missing, or lost. Battles again truthfully filled out the form.

7

23.  Defendants never advised Mrs. Battles, or her husband, that they owned and or manages other apartment complexes, where her family could move, if available ground floor units became available, in any of them. These Defendants specifically did not mention such units being available in Foley Alabama.

24. Sometimes during the month of November 2019, Ms. Well advised Mrs. Battles that she could move into one of her vacant ground floor units, provided that she pay an additional $170.00 monthly rent. This Unit (Apt. 115) in all relevant particulars, was identical to her current unit, except for it being situated on the ground floor. In October apartment 315(directly under Mrs. Battles' unit) became available but Ms. Wells refused to rent it to her. Other units such as Apt. 417, 214, and 212 would also come available.

25. Battles neither could afford such an increase in rent, nor did she feel that it was fair. Thus, she had to and did decline the offer.

26. The rental housing complex owned, managed or controlled by the defendant a three-story complex with no elevator.

27.  On January 1, 2020, while walking down the steps, Mrs. Battles' knees gave out and she went tumbling down the steps, causing further injury, pain and discomfort. This injury required medical treatment and costs.

28.  On February 13, 2020, after repeatedly contacting Wells and asking for a ground floor, Battles contacted Legal Services seeking legal assistance.

8

29. Battles' Legal Services counsel, on February 28, 2020, contacted the Defendants in writing in an effort to facilitate the acquisition of a ground floor unit. The letter informed that such a transfer was needed as a reasonable accommodation for Mrs. Battles' severe medical problems.

30. Nearly one month after this contact, the Defendants corresponded back denying that they were failing or refusing to accommodate Mrs. Battles. Their response didn't offer an accommodating apartment unit in any of their facilities. Finally, the Defendants' response reaffirmed that to qualify for some ground floor units, Mrs. Battles would have to cough up an additional $185.00 monthly rental.

31. Battles and her family reside on the second of the three floors of the COMPLEX.

32. Mrs. Battles combination of physical impairments substantially limit several major life activities, including walking, climbing stairs, caring for herself and working.

33. These impairments has grown worse during the more than one year that Mrs. Battles has had to battle navigating to her upstairs unit.

34. Mrs. Battles has extensive medical records supporting her physical impairments, which demonstratively are progressive in nature, due in no small part to her constantly navigating a flight of stairs.

35. Mrs. Battles treating physician regards her as having major impairments which would be lessen, or at least not become as aggravated, if she was relocated to the ground floor. This physician has further informed the Defendants of his clinical findings

9

and has encouraged the Defendants, in writing, to permit Mrs. Battles to transfer to a ground floor apartment.

36.   Every time when Mrs. Battles must negotiate the two floors, which is at least four times a day, it places a strain on her lower back and knees. It takes approximately 15 minutes for her to ascend the flights of stairs. She needs to take breaks every four to six steps.  She requires about two breaks per trip to catch her breath.

37.   Mrs. Battles would take short walks to strengthen her knees but for her having to claim a flight of stairs every time that she leaves her apartment. She would also utilize the **COMPLEX'S** common swimming pool and its' clubhouse, except for the same deterrent. She is being and for the past year has been denied these amenities, which amenities are available to the **COMPLEX'S** non-disabled able-bodied tenants.

38.   Mrs. Battles is a lawful tenant living in the **COMPLEX,** which consists of three floors.  No access to a common elevator is available for any of the floors. For any floor above the ground floor, walking up the stairs is the sole method of ingress and egress for everyone, even those who cannot without difficulty climb or descend stairs, such as Mrs. Battles.

39. The practical effect of the Defendants not having a non-exertional means to navigate to the **COMPLEX'S** second and third floors means that these floors are effectively not available, in a meaningful manner, to tenants, such as Mrs. Battles who has a disability which affects their mobility and means of navigating a flight of stairs. Therefore, of the **COMPLEX'S**  90 plus residential units, only the ground floor would

be available to them. Yet the entire **COMPLEX** is available to its able-bodied tenants. This is tantamount to disability (or better stated "ability") discrimination.

40.  The **COMPLEX** was constructed on or after the year 2013 and thus it was required to be designed and constructed according to the Standards for Accessible Design, 28 C.F.R. § 36.401; 28 C.F.R. Pt. 36 Appendix A (1991 ADA Standards for Accessible Design), as amended at 28 C.F.R. Pt. 36 Appendix D (1997 ADA Standards for Accessible Design) (hereinafter, the "ADA Standards").

41.  The **COMPLEX** was constructed and first occupied in the year 2013, as such, its public and common use areas were required to be "readily accessible and useable" by handicapped persons. This would include an accessible path of travel from public transportation and private parking to the dwelling unit. Such path of travel in a multi-story building necessarily requires a usable, serviceable and accessible elevator.

42.  The COMPLEX 's dwelling units above the first floor require that disabled persons, with mobility impairments, use an elevator to reach the front door of their dwelling units. Thus, such elevator is always a necessary part of the accessible path of travel to dwelling units above the first floor, such as those occupied by Mrs. Battles.

43.  Because of the Defendants' failure to install and maintain an elevator for the upper floors, these units have been rendered less desirable to the aged and the disabled. Thus, the only units which will ensure fairness and not be discriminatory are those situated on the ground floor. This limitation puts disabled tenants, such as Mrs. Battles,

at a disadvantage and treats them in a discriminatory manner with respect to able tenants, who have access to the complex's full array of residential units.

## FEDERAL CLAIMS FOR RELIEF

### COUNT I:
### VIOLATION OF THE FEDERAL FAIR HOUSING ACT
### [ 42 USC 3601 et seq.]

**44.** Plaintiff incorporates herein by reference hereto the above allegations as if more fully set forth herein at length.

**45.** The above defined building and the units (**COMPLEX**) therein meet the definition of a "dwelling" as defined by the Federal Fair Housing Amendments Act of 1988, 42 U.S.C. §3602 (b).

**46**. The Fair Housing Amendments Act (" FHAA") prohibits discrimination " in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap." 42 U.S.C. § 3604(f)(1). Discrimination includes " a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).

**47.** To make out a claim of discrimination based on failure to reasonably accommodate, a plaintiff must demonstrate that " (1) she suffers from a handicap as defined by the FHAA; (2) defendants knew or reasonably should have known of the plaintiff's handicap; (3) accommodation of the handicap 'may be necessary' to afford

12

plaintiff an equal opportunity to use and enjoy the dwelling; and (4) defendants refused to make such accommodation."

**48.** Mrs. Battles suffers from several medical conditions which in combination meets the definition of a "handicap" under 42 U.S.C. §3602(h)(1), (2) and (3).

**49.** The Defendants have in writing acknowledged that Mrs. Battles is a "handicap" under 42 U.S.C. §3602(h)(1), (2) and (3).

**50.** By refusing to grant, unreasonably delaying., or charging a fee to approve Mrs. Battles' request for a first-floor unit, the Defendants have unlawfully, and in direct violation of 42 U.S.C. §3604(0(3)(b),  discriminated against Plaintiff by refusing to make reasonable accommodations in rules, policies, practices and/or services, when such accommodation was necessary to afford Mrs. Battles an  equal opportunity to use and enjoy the dwelling.

**51.** Defendants unlawfully refused to relocate Mrs. Battles to a first-floor apartment, despite her numerous requests, and when they finally agreed to transfer her, it was only if she agrees to pay an additional $185.00 a month rental, which she couldn't afford.

**52.** Mrs. Battles has been and continues to be injured in her person by reason of the Defendants unlawful violations of 42 U.S.C. §§ 3601 *et seq*. Mrs. Battles has experienced extreme physical pain and has had to undergo several visits to the doctor. As a result of her living in an upstairs apartment, Mrs. Battles' medical condition has worsened. She has also suffered the severe emotional and psychological distress which

13

naturally accompanies such an extreme exertion that is required to navigate two flights of stairs.

**WHEREFORE,** Plaintiff demand judgment against the Defendants, jointly and severally, for compensatory and punitive damages in such sum as a jury determines to be just, reasonable and adequate, together with attorney's fees, litigation costs and interest, and for such other relief as this Honorable Court deems to be just.

**COUNT II**
**DEFENDANTS' VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT: DENYING EQUAL OPPORTUNITY FOR INDIVIDUALS WITH DISABILITIES**
**42 U.S.C. §§12101 et seq.**

**53.** Plaintiff incorporates herein by reference hereto the above allegations as if more fully set forth herein at length.

**54.** The American With Disabilities Act (ADA) ADA provides that: 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity'. 42 U.S.C. § 12132. This Act further require that covered entities make reasonable accommodations in order to provide qualified individuals with an equal opportunity to receive benefits from or to participate in programs run by such entities. Specifically, " [t]he ADA provides that 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.' 42 U.S.C. § 12132)

55.   Defendants meet the definition of "public entity" under 42 U.S.C. §§1210I et seq. (hereinafter referred to as "Title II").

56.  Plaintiff meets the definition of "a qualified individual with a disability" under Title II. For purposes of Title II, a "qualified individual with a disability" is defined as an individual with a disability "who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). There is no dispute that plaintiff is a qualified individual with a disability, and that defendants are public entities subject to Title II of the ADA.

57.  By unlawfully refusing to reasonably modify Mrs. Battles' living conditions, Defendants denied her the benefits of their housing program and services by reason of her disability.

58.  By unlawfully refusing to reasonably modify Mrs. Battles' living conditions, Defendants discriminated against her.

59.   Plaintiff has been and continues to be injured in her person by reason of Defendants unlawful violations of the Act.

60.  Mrs. Battles has experienced extreme physical pain, has had to undergo several visits to the doctor. She has also suffered the severe emotional and psychological distress as a direct result of the actions of the Defendants.

15

**WHEREFORE,**  pursuant to 42 U.S.C. § 12188 and 42 U.S.C. §§ 2000a-3(a) (b) the plaintiff demands judgment against the Defendants, jointly and severally, for injunctive and other forms of equitable relief, together with attorney's fees, litigation costs and interest, and for such other relief as this Honorable Court deems to be just.


## COUNT III
### DEFENDANTS' VIOLATION OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT: DENYING EQUAL ACCESS TO PUBLIC ACCOMMODATIONS FOR INDIVIDUALS WITH DISABILITIES
### 42 U.S.C. § 12182(a) *et seq.*

**61.**  Plaintiff incorporates herein by reference hereto the above allegations as if more fully set forth herein at length.

**62.**  This action concerns the obligations that Title III of the ADA imposes upon those who construct and operate public accommodations such as indoor arenas. The cornerstone of Title III is 42 U.S.C. § 12182(a), which mandates that persons with a disability receive the "full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation ..."

**63.**  The plain language of Title III of the ADA imposes compliance obligations on any person who " owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a) (emphasis added). Most certainty the Defendant's main office, its clubhouse and its pool are places owned by the Defendants

16

and would be used by Mrs. Battles more frequently but for the refusal to accommodate her ground floor demand.

64.   In drafting Title III of the ADA, Congress painted with a broad brush and then directed the Attorney General to promulgate regulations to implement the law. 42 U.S.C. § 12186(b). Those regulations were to include design standards, which must be "consistent with the minimum guidelines and requirements issued by the Architectural and Transportation Barriers Compliance Board," commonly referred to as the "Access Board." 42 U.S.C. § 12186(c).

26.   At all times relevant to this action, Defendants were recipients of federal funding.

65.   As recipients of federal funds, Defendants must operate their housing COMPLEX (their housing program or activity receiving federal financial assistance) so that the program or activity, when viewed in its entirety, is readily accessible to and usable by individuals with handicaps. 24 C.F.R. § 8.24. This includes compliance with the Uniform Federal Accessibility Standards (UFAS) and maintenance of accessible features. 24 C.F.R. § 8.32.

66.   Mrs. Battles is a qualified individual with a disability as defined in ADA.

67.   Defendants have violated the ADA, by discriminating against disabled persons, including Plaintiffs herein by, among other things:

   a.   Failing to make their premises accessible to and usable by tenants with disabilities;

17

**b.**     Failing to make the dwelling units adaptable for use by persons with disabilities;

**c.**     Failing to maintain the accessible features of their property such as the elevator providing ingress and egress to tenants with disabilities above the first floor;

**d.**     Failing and refusing to otherwise grant requests for reasonable accommodation by disabled tenants who suffer special damage, inconvenience and hardship as a result of the unavailability of the elevator at the premises.

68.     Mrs. Battles has been and continues to be injured in her person by reason of Defendants' unlawful violations of the Act.

69.     The Plaintiff has experienced extreme physical pain, has had to undergo several visits to the doctor. She has also suffered the severe emotional and psychological distress as a direct result of the actions of the Defendants.

**WHEREFORE,**  pursuant to 42 U.S.C. § 12188 and 42 U.S.C. §§ 2000a-3(a) (b) the Plaintiff demands judgment against the Defendants, jointly and severally, for injunctive and other forms of equitable relief, together with attorney's fees, litigation costs and interest, and for such other relief as this Honorable Court deems to be just.

<u>**COUNT IV**</u>
**DEFENDANTS' VIOLATION OF SECTION 504 OF
THE REHABILITATION ACT OF 1973
[29 U.S.C. § 794]**

**70.**  Plaintiff incorporates herein by reference hereto the above allegations as if more fully set forth herein at length.

**71.**  To establish a prima facie case under Section 504 of the Rehabilitation Act, a plaintiff must demonstrate that: (1) she is disabled within the meaning of the Rehabilitation Act; (2) she is otherwise qualified for the benefit or services sought; (3) she was denied the benefit or services solely by reason of her disability; and (4) the program providing the benefit or services receives federal financial assistance.

**72.**  At all times relevant to this action, Defendants were a recipient of federal funding, load guarantee, or beneficial tax breaks within the meaning of the Rehabilitation Act. By federal mandate, Defendants are required to adjust the rental which they charge according the tenant's income consistent with a rent ceiling and a rent floor.

**73.**  As recipients of federal funds/loan guarantees or tax breaks, Defendants must operate their COMPLEX (their housing program or activity receiving Federal financial assistance) so that the program or activity, when viewed in its entirety, is readily accessible to and usable by individuals with handicaps. 24 C.F.R. § 8.24. This includes compliance with the Uniform Federal Accessibility Standards (UFAS) and maintenance of accessible features. 24 C.F.R. § 8.32.

**74.**  Mrs. Battles is a qualified individual with a disability as defined in the Rehabilitation Act.

75.   The Defendants have, in writing, acknowledged that Mrs. Battles is a qualified individual with a disability

76.   Defendants have violated the Rehabilitation Act, by discriminating against disabled persons, including Plaintiffs herein by, among other things:

   a.   Failing to make their premises accessible to and usable by tenants with disabilities;

   b.   Failing to make the dwelling units adaptable for use by persons with disabilities;

   c.   Failing to maintain the accessible features of their property such as the elevator providing ingress and egress to tenants with disabilities above the first floor;

   d.   Failing and refusing to grant requests for reasonable accommodation by disabled tenants who suffer special damage, inconvenience and hardship as a result of the unavailability of the elevator at the premises.

   e. Failing and refusing to grant requests for reasonable accommodation by disabled tenants who suffer special damage, inconvenience and hardship by allowing her to move into a floor level apartment.

77.   By their policy and practice of intentionally discriminating or engaging in reckless indifference to the rights of Mrs. Battles, and by failing to reasonably

20

accommodate her and other tenants with mobility disabilities, these Defendants have violated § 504 of the Rehabilitation Act, 29 U.S.C. § 794.

**78**.   Mrs. Battles' harms and losses continue so long as Defendants refuse to modify their policies and procedures and refuse to provide fully accessible facilities for her and other tenants with mobility disabilities.

**79.**   As a result of Defendants' conscious disregard, evidenced by the lack of accessible facilities, and their refusal to make a reasonable accommodation, despite prior notice of such violations and such request, Mrs. Battles  suffered harms and losses which include, but are not limited to physical injuries and physical and mental pain, fear, degradation and severe emotional distress, as well as medical and psychological damages, and other injuries due to the discrimination experienced  from  the unlawful acts of these Defendants.

**WHEREFORE,** pursuant to 29 U.S.C. § 794a(a)(2) the Plaintiff demands judgment against the Defendants, jointly and severally, for injunctive and other forms of equitable relief, together with attorney's fees, litigation costs and interest, and for such other relief as this Honorable Court deems to be just.

## STATE LAW CLAIMS

### COUNT V
### NEGLIGENCE:  LOSS OF APPLICATION
### REQUESTING AN ACCOMMODATION

80.  Plaintiff incorporates herein by reference hereto the above allegations as if more fully set forth herein at length.

81. By their own admission, the Defendants lost or otherwise misplaced Mrs. Battles initial Request for and Accommodation which she left with them.

82.  This "Request" form is a necessary requirement for the Defendants to process any tenant request for an accommodation. It was a requirement to process Mrs. Battles' request.

83.  As a result of the Defendants loss of this form, several months elapsed when no action was taken concerning Mrs. Battles' accommodation requests.

84.  As a result of no action being taken on Mrs. Battles' request, for each day that Mrs. Battles, as a feature of ordinary living, had to navigate traveling up and down a flight of stairs, each such negotiation caused her pain, hurt, discomfort  and an aggravating  and  deteriorating  medical  condition.

85.  The Defendants, their servants, agents, and employees, owed Mrs. Battles a duty of care to properly handle and not lose her Request for an Accommodation application.

86. It was reasonably foreseeable that if care was not exercised in the handling of Mrs. Battles' Request for an Accommodation that there would be delay in the approval of such application.

87.  It was further reasonably foreseeable that if care was not exercised, that given Mrs. Battles known medical condition and the effects of navigating the stairwell,

that she would experience adverse conditions if there was a delay in the processing of her request.

**88.** As a direct and proximate result of the Defendants' negligence, Mrs. Battles did suffer injury to her body, both on a daily basis and upon her fall down the steps on January 1, 2020.

**WHEREFORE,** the Plaintiff demands judgment against the Defendants, jointly and severally, for all provable damages suffered by her as a result of their negligence, plus litigation costs and interest, and for such other relief as this Honorable Court deems to be just.

**COUNT VI**
**BREACH OF CONTRACT**

**89.** Plaintiff incorporates herein by reference hereto the above allegations as if more fully set forth herein at length.

**90**. Mrs. Battles, prior to executing a contract with the Defendants, informed them, by and through one of their authorized agents, that she needed a ground level residential unit necessitated as a result of her disabling medical condition, for which she was and remain receiving treatment.

**91.** An authorized agent, servant or employee of the Defendants, acting on and for their behalf, informed Mrs. Battles that if she would move into an available second floor apartment, when a comparable three bedroom apartment becomes available, on the ground floor, that it would be offered to her with a right of first refusal.

23

92.   Several such comparable three-bedroom units became available over the ensuing year, and, with one exception, none of these apartments were offered to Mrs. Battles, and when she requested such units, they were denied to her.

93.   The one exception was that a ground floor apartment was offered to Mrs. Battles in November 2019, provided that she would agrees to pay an additional $170.00 per month as increased rental.

94.   To date, the Defendants have continued to be in breach of their contract with Mrs. Battle, resulting in her sustaining damages, as described herein.

95.   Further, and as a second breach, by operation of law, any obligation imposed upon a qualifying landlord, by federal law, implicitly becomes part of the contractual agreement, whether incorporated in the agreement of not. The Federal Fair Housing Act requiring landlords to make reasonable alteration to their rules policies and practices so as to not discriminated against the handicap, is one such law incorporated within the Defendants' rental agreement with Mrs. Battles.  These Defendants have failed or otherwise refused to make such an accommodation, as repeatedly requested by Mrs. Battles, resulting in a further breach of their contract with her.

**WHEREFORE,** the Plaintiff demands judgment against the Defendants, jointly and severally, for all provable damages suffered by her as a result of their breach, plus litigation costs and interest, and for such other relief as this Honorable Court deems to be just.

## **PRAYER FOR RELIEF**

24

Plaintiff has no adequate remedy at law to redress the equitable wrongs suffered as set forth in this Complaint. Mrs. Battles has suffered and will continue to suffer irreparable injury as a result of the unlawful acts, omissions, policies, and practices of the Defendants, as alleged herein, unless after a hearing she is granted the equitable relief she requests herein. There is an actual controversy and opposing legal positions as to Defendants' violations of the laws of the United States and the State of Alabama. The need for relief is critical because the rights at issue are paramount under the laws of the United States and the State of Alabama.

**WHEREFORE**, above premises considered, the Plaintiff prays for judgment and the following specific relief against the Defendants:

A.     An order enjoining Defendants, their agents, officials, employees, and all persons acting in concert with them:

     a.     From continuing the unlawful acts, conditions, and practices described in this Complaint, specifically, the failure or refusal to permit her and her family to move to a downstairs apartment;

     b.     If the accommodation transfer is not granted, then an Order to modify **COMPLEX'S** facilities to make them accessible to and useable by all persons with physical disabilities;

     c.     To maintain such accessible facilities once they are provided;

     d.     To train each of Defendants' employees and agents in how to accommodate the rights and needs of physically disabled persons;

     **e.**      To implement nondiscriminatory protocols, policies, and practices for accommodating persons with mobility disabilities, and

     **f**.      To modify the **COMPLEX'S** dwelling units to provide adaptable features as set forth above.

**B.**      To retain jurisdiction over the Defendants until such time as the Court is satisfied that the Defendants' unlawful policies, practices, acts and omissions, as complained of herein no longer occur, and cannot recur;

**C.**  Award to Plaintiff all appropriate damages, including but not limited to statutory damages, general damages, treble damages and punitive damages in amounts within the jurisdiction of the Court, all according to proof;

**D.**  Award to Plaintiffs all reasonable statutory attorney fees, litigation expenses, and costs of this proceeding as provided by federal and state law;

**E.**  Award prejudgment interest pursuant to Alabama Law; and

**D.**  Grant such other and further relief as this Court may deem just and proper**.**

Submitted this  15th day of April 2020

           **S/s Ishmael Jaffree (Jaff 002)**
           **ISHMAEL JAFFREE, Lead counsel**
           **For the Plaintiff, Monique Battles**
           **800 Downtowner Blvd, Ste 106 B**
           **Mobile AL 36609**
           **251-694-9090**
           **ishjaff@gmail.com**

**S/s Greg Ramos ( RAM 025 )**
**GREG RAMOS, Co-counsel for**
**The Plaintiff**
**P.O.  Box 1986**
**Mobile AL 36602**
**251-433-6560**
**gramos@alsp.org**

**S/s Spencer Phillips ( PHI 045            )**
**SPENCER PHILLIPS, Co-counsel for**
**The Plaintiff**
**P.O.  Box 1986**
**Mobile AL 36602**
**251-433-6560**
sphillips@alsp.org